**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TIEQUAIL BROWN**                                                    **PLAINTIFF**
*ADC #185015*

**v.**                          **No: 4:24-cv-00355-JM-PSH**

**KIM PARSONS,** *et al.*                                      **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Tiequail Brown filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on April 23, 2024 (Doc. No. 1).  Brown sues Turnkey Health ("TK Health") Nurses Kim Parsons and Kellie Echols (the "TK Defendants") and Saline County Captain Wade Gilliam and Sheriff Rodney Wright (the "County Defendants") in both their

official and individual capacities.  Doc. No. 1 at 1-2.  He alleges that the defendants were deliberately indifferent to his serious medical needs (a broken tooth) while he was incarcerated as a pre-trial detainee at the Saline County Detention Center in 2023-2024.[1]  *Id.* at 4.

Before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by the TK Defendants (Doc. Nos. 30-32) and a motion for summary judgment, brief in support, and statement of undisputed facts filed by the County Defendants (Doc. Nos. 33-35).  Brown was notified of his opportunity to file a response to the motions for summary judgment and separate statements of disputed facts (Doc. No. 36).  He filed a one-page response to the TK Defendants' motion (Doc. No. 37),[2] and they filed a reply (Doc. No. 40).  He filed no response to the County Defendants' motion or their statement of undisputed facts. Because Brown failed to controvert the facts set forth in the defendants' statements of facts, Doc. Nos. 31 & 35, those facts are deemed admitted.  *See* Local Rule

---

[1] Brown is currently incarcerated in the Arkansas Division of Correction's East Arkansas Regional Unit.  *See* Doc. No. 8.

[2] Brown's response references document number 30, which is the TK Defendant's motion for summary judgment.  Doc. No. 37.  However, to the extent Brown intended this document to be a response to the TK Defendants' statement of undisputed facts (Doc. No. 31), he does not specifically refute any of their undisputed facts; rather, he generally alleges that it is not true he was seen every time he submitted a sick call.  Additionally, he adds a new allegation – that the ibuprofen and Tylenol he was given for pain may have damaged his internal organs.  He makes no such claim in his complaint in this case.  *See* Doc. No. 1 at 4.

56.1(c). The defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and they are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact

is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Undisputed Facts[3]

Brown was booked into the Saline County Detention Center (the "Facility") on January 27, 2023, and released to the Arkansas Department of Corrections on June 28, 2024.  Doc. No. 35-1 at 4.

---

[3] The undisputed facts were submitted by the defendants and are supported by the following documents attached to their motions for summary judgment: Brown's TK Health medical records and medical requests (Doc. No. 30-1); Brown's medical records from East Arkansas Regional Unit (Doc. No. 30-2); Brown's Saline County Detention Center records (Doc. No. 30-3); a sworn declaration from Kimberly Parsons, LPN (Doc. No. 30-8); a sworn declaration from Kellie Echols, LPN (Doc. No. 30- 9); a transcript of Brown's Deposition (Doc. No. 35-3); Gilliam's affidavit with records attached (Doc. No. 35-1); and Wright's affidavit (Doc. No. 35-2).  Opinions, legal conclusions, and immaterial facts are omitted.

### *County Defendants' Involvement with Brown*
### *at the Facility & Relevant Policies*

Captain Wade Gilliam was the Jail Administrator at the Saline County Sheriff's Department in Benton, Arkansas from January 2021 through July 2024. Doc. No. 35-1 at 1, ¶ 1.  He held the position during Brown's period of alleged deficient care for broken teeth as described in his complaint. *Id.* As the Jail Administrator, Gilliam generally managed the operations of the detention center. *Id.* at 1, ¶ 2.  In 2016, the County entered into a contract with TurnKey Medical (also referred to as "TK Health") to manage jail medical care. *Id.*  Brown was under TK Health's care during the period of the alleged deficient care for broken teeth. *Id.*

Rodney Wright is the Sheriff of Saline County and held the same position during Brown's period of alleged deficient medical care for broken teeth as described in his complaint. Doc. No. 35-2 at 1, ¶ 1.  Wright delegates responsibility for most day-to-day jail management activities to subordinate officers through a chain of command in each division. *Id.* at 1, ¶ 2.  Those officers are expected to perform those day-to-day tasks pursuant to policies he has implemented for the department. *Id.*  TK Health coordinated and provided all care for detainees in the Facility, including Brown. *Id.* at 1, ¶ 3.  TK Health staff saw him and the other detainees with health problems as needed, during regular "sick calls," prescribed and distributed necessary medications during "pill call," answered all detainee medical requests, and would alert Detention Center staff of an inmate's need for an outside

medical visit (such as a dental visit).  *Id.* at 1-2, ¶ 4.  Wright explained that it is the policy of the Saline County Detention Center to rely on the medical judgment of TK Health, but that staff is also charged with monitoring the health needs of inmates and alerting TK Health if they think an inmate needs medical attention (either through a grievance or personal interaction).  *Id.* at 2, ¶ 5; Doc. No. 35-1 at 2, ¶ 4.

Gilliam and Wright did not have any personal interaction with Brown (either through conversation, letter, or grievance elevated to their level through the grievance process during the period of the alleged improper treatment. Doc. No. 35-1 at 2, ¶ 5; Doc. No. 35-2 at 2, ¶ 6.  Brown testified in his deposition that Gilliam did not personally fail to prescribe any medicine or treat his teeth, and that he sued Gilliam because he is in charge of the Facility.  Doc. No. 35-3 at 17: 17-21.  Brown testified in his deposition that Wright had no personal involvement in his medical care, that he directed no correspondence to the Sheriff, and that he never met Wright. *Id.* at 18:1-15.  Brown testified that he sued Wright because he implemented a policy requiring detainees to submit three sick calls before they could be seen by a dentist. *Id.* at 18:17-19:7.

Saline County had a dental service policy in place to govern the provision of dental care for detainees in the Detention Center in 2023-2024.  Doc. No. 35-1 at 246 (D8.4 Detainee Dental Services).  The policy provides that detainees "shall receive emergency dental treatment and other dental treatment as deemed necessary

by a contract dentist." *Id.* It further provides that the severity of a detainee's pain or infection will determine if the dental problem is an emergency, and that detainee requests for dental care are to be documented on a request/grievance form provided by the detention officer and then forwarded to nursing staff. *Id.*

### *Brown's Dental Treatment at the Saline County Detention Center*

Brown consented to receive treatment from TK Health at the Facility. Doc. No. 30-1 at 25. A nonparty nurse performed Brown's initial medical screening. Doc. No. 30-1 at 3-7; Doc. No. 30-8 at ¶ 4; Doc. No. 30-8 at ¶ 4. According to the intake form, Brown told the TK Health nurse that he had no major dental conditions.[4] *Id.*

On March 21, 2023, Brown placed a sick call request regarding tooth pain, stating that "the whole right side of my face is swelling and i have abscesses and an ear infection something wrong with my teeth and a messed up arm that i was supposed to see the doctor for im really going to report this jail for malpractice." Doc. No. 30-1 at 24. On March 22, Parsons notified Brown that he would be seen in clinic. *Id.;* Doc. No. 30-8 at ¶ 7.

---

[4] According to Brown's deposition testimony and past medical records, he was a heavy smoker, had some prior dental problems, and had multiple teeth removed prior to his incarceration at the Facility. *See* Doc. No. 35-3 at 31:11-32:18. *See also* Doc. No. 30-4 (Brown's health records from Colorado Coalition for the Homeless); Doc. No. 30-5 (Brown's medical records from Denver Health); Doc. No. 30-6 (Brown's medical records from Mental Health Center of Denver); Doc. No. 30-7 (Brown's medical records from Chesterfield Mental Health).

In May or June 2023, a nonparty nurse told Brown that he would not see a dentist; she then offered to treat at least six of Brown's teeth with a "film" or "coating" to prevent dental decay, but Brown declined this treatment. Doc. No. 35-3 at 48:11-50:25, 55:9-12.

On June 5, 2023, Brown placed a sick call request, stating "I have a broken tooth on the left side and its starting to get infected it is causing alot of pain and discomfort and is starting to make my gums swell." Doc. No. 30-1 at 22. A nonparty nurse examined Brown's "top right middle" tooth in response to his complaint of "tooth throbbing." Doc. No. 30-1 at 45-46. The nurse noted that there was no evidence of dental decay, no swelling, no redness, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to be in only "mild distress." *Id.* The nonparty nurse administered ibuprofen and orajel topical treatment for seven days to treat Brown's pain. *Id.*

On June 13, 2023, Brown placed a sick call request regarding tooth pain, stating "I'm starting to get a toothache from this broken tooth and an ear infection with it it's getting very bad." Doc. No. 30-1 at 21. Parsons examined Brown's "top right 2nd molar" the following day. *Id.* at 43-44. She noted the "tooth is broken off," but that there was no evidence of dental decay, no swelling, no redness, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to

be in "mild distress." *Id.* Parsons administered 325mg acetaminophen for seven days to treat Brown's pain complaint. *Id.*

On June 23, 2023, Brown placed a sick call request regarding tooth pain, stating "My tooth it still in pain and my ear is hurting also its becoming loose and sensitive to the touch." Doc. No. 30-1 at 27. A nonparty nurse examined Brown's fourth tooth (small molar in upper right jaw) on June 25, 2023. *Id.* at 40, 42. The nonparty nurse noted that there was evidence of dental decay, but that "overall teeth are well," there was no swelling, no redness, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to be in "no distress." *Id.* The nonparty nurse administered 200 mg ibuprofen for seven days to treat Brown's pain. *Id.*

On September 22, 2023, Brown placed a sick call request regarding tooth pain, stating "I have two broken teeth beside each other im going to need dental treatment for them please and thank you." Doc. No. 30-1 at 23. The following day, Parsons notified Brown that he would be seen in clinic, and he was later examined by Echols. *Id.* at 23, 38-39. Echols examined Brown's "upper right 1st and 2nd molar" and noted that there was evidence of dental decay, but there was no redness around the teeth, no swelling, no trauma, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to be in "mild distress." *Id.* Echols administered

325mg acetaminophen and orajel topical treatment for seven days to treat Brown's pain. *Id.*

On September 30, 2023, Brown placed a sick call request regarding tooth pain, stating "my Tylenol has been stopped but im still having pain in my mouth from my two broken teeth and they are still chipping away as I eat I would like to see a dentist or have some work done on my teeth." Doc. No. 30-1 at 26. On October 1, Parsons responded to this sick call request, stating "I will continue the tylenol for 7 days and get you on the list for the dentist." *Id.*

On October 3, 2023, Brown placed a sick call request complaining of toothache. Doc. No. 30-1 at 16. The following day, Echols notified Brown that he would be seen in clinic. *Id.* On October 5, 2023, a nonparty nurse examined Brown's "two upper r[ight] teeth" in response to his complaint of "toothache." Doc. No. 30-1 at 36-37. The nonparty nurse noted that there was evidence of dental decay which she described as "black in center of teeth." *Id.* at 36. She also noted "some redness" and "cracked teeth," but that there was no swelling, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to be in "no distress." *Id.* The nonparty nurse administered ibuprofen and orajel topical treatment for seven days to treat Brown's pain complaint. *Id.*

On October 10, 2023, Brown placed a sick call request regarding tooth pain, stating "my teeth are getting worse and im starting to bleed from under them." Doc.

No. 30-1 at 20.  Parsons notified Brown that he was scheduled to be seen in clinic. *Id.*  On October 11, 2023, Echols examined Brown's "right first premolar, second premolar, and first molar."  *Id.* at 34-35.  She noted that there was evidence of dental decay, but there was no redness around the teeth, no swelling, no trauma, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to be in "mild distress."  *Id.*  Echols administered Brown 325mg acetaminophen and orajel topical treatment for seven days.  *Id.*

On November 2, 2023, Brown submitted a grievance, stating "I was supposed to see a dentist for my broken teeth but I haven't and they stopped my pain meds now my gums are starting to swell and I'm in more pain I would like something to be done about this treatment from the nurses. . . . I would like to see a dentist and be put on pain meds for the pain."  Doc. No. 30-3 at 1-2.

Echols no longer worked at the Facility after January 2024.  Doc. No. 30-9 (Declaration of Kellie Echols, LPN) at ¶ 2.  Parsons no longer worked at the Facility after February 2024.  Doc. No. 30-9 (Affidavit of Kimberly Parsons, LPN) at ¶ 2.

On March 11, 2024, Brown placed a medical call regarding his teeth, stating "ive been having problems with two of my teeth im in alot of pain and I need to be seen by a dentist to possibly have them pulled."  Doc. No. 30-1 at 15.  The next day, a nonparty nurse examined Brown's top right second and third molars.  *Id.* at 32-33.  She noted that there was evidence of dental decay described as "visible decay, rotted,

small hole on inner second molar." *Id.* at 32. She also noted "slight swelling" around the affected teeth, but noted no redness around the teeth, no external swelling, no trauma, no pus, no sign of infection, teeth were not positive to percussion, and that Brown appeared to be in "moderate distress." *Id.* at 32-33. The nurse administered orajel topical treatment and saltwater rinse for seven days. *Id.* at 33.

On March 22, 2024, Brown placed a medical call regarding his teeth, stating "I put in a sick call for my mental health and my teeth and I haven't been seen I need to be seen." Doc. No. 30-1 at 13. On March 23, 2024, a nonparty nurse examined Brown's "upper right." Doc. No. 30-1 at 30-31. The nonparty nurse noted that there was evidence of dental decay as one of the two teeth was "broken off," but there was no redness around the teeth, no swelling, no trauma, no pus, no sign of infection, teeth were not positive to percussion, and Brown appeared to be in "mild distress." *Id.* The nurse administered 200 mg ibuprofen, 325 mg acetaminophen, and orajel topical treatment for seven days. *Id.*

On April 3, 2024, Brown placed a grievance with Facility staff, stating "I've put in several grievances and sick calls in about my teeth and I've been refused treatment I am in constant pain and my jaw is starting to ache from my broken teeth . . . I would like to talk to the captain or the sheriff about my options for treatment." Doc. No. 30-3 at 3. On April 5, detention staff stated they would notify "medical administration." *Id.*

On April 11, 2024, Brown placed a grievance with Facility staff, stating "I've been waiting to see a dentist about my teeth and my sick calls have been ignored." Doc. No. 30-3 at 5.

On April 13, 2024, Brown placed a medical call regarding his teeth, stating "I've been having intense pain in my teeth and gums." Doc. No. 30-1 at 17. On April 14, 2024, a nonparty nurse examined Brown's teeth in response to his complaint of dental pain. Doc. No. 30-1 at 28-29. The nonparty nurse noted that there was evidence of dental decay, but there was no redness around the tooth, no swelling, no trauma, no pus, no sign of infection, tooth was not positive to percussion, and Brown appeared to be in "mild distress." *Id.* The nurse administered ibuprofen, acetaminophen, and orajel topical treatment for seven days. *Id.*

On April 23, 2024, Brown filed this lawsuit. Doc. No. 1.

On April 29, 2024, Brown placed a grievance with Facility staff, stating "I was charged for 2 sick calls for the same problem and one of them doesn't even have a date and y'all have been blocking my sick calls and not giving me proper treatment . . . Give me my money back and send me to the dentist . . . ." Doc. No. 30-3 at 7.

On May 7, 2024, Brown placed a sick call request regarding his teeth, stating "my teeth still hurts I need to do a follow up on them." Doc. No. 30-1 at 14. A non-party nurse responded to this sick call request, stating "You will be seen in clinic."

*Id.* The nurse also noted that she "renewed [Brown's] meds until dental appointment." *Id.*

On June 11, 2024, Brown placed a grievance with Facility staff, stating "I've been putting in sick calls about my tooth and I have an infection in my jaw I need to be seen and I haven't been seen. . . . Please do something about the infirmary staff they are not doing their job." Doc. No. 30-3 at 9. Detention Officer Silva responded, "I'm giving this to medical." *Id.*

### *Brown's Dental Treatment at the Arkansas Division of Correction (ADC)*

In late June 2024, Brown was transferred from the Facility to the ADC's Ouachita River Correction Unit ("ORCU"). Doc. No. 30-2 at 8 (intake assessment).

On July 1, 2024, Brown was examined by Larry Davis, DDS (a dentist unaffiliated with TK Health), as part of his dental intake at ORCU. Doc. No. 30-2 at 2. Dr. Davis examined Brown and took a panoramic x-ray. *Id.* He noted that Brown's oral hygiene was "moderate," and recommended three fillings and the extraction of teeth 4 and 5. *Id.* However, Dr. Davis determined that there was no "emergent dental need" nor was there an "emergent need for dental hygiene services at [that] time." *Id.* Dr. Davis prescribed Brown to take acetaminophen for two weeks. *Id.* Dr. Davis did not schedule the extractions. *Id.*

On July 3, 2024, Brown was examined by a nurse not employed by TK Health, who noted that Brown's teeth merely needed "routine treatment," and his mouth appeared "normal." Doc. No. 30-2 at 9-10.

On July 25, 2024, Brown placed a sick call stating: "My jaw is still in a lot of pain from my broken teeth and its getting worse can I please get more pain med I ran out and I'm in a lot of pain." Doc. No. 30-2 at 6-7. A nurse not employed by TK Health examined Brown, who told the nurse that "he has a few broken teeth top right of mouth, they have been broken for about a year. Dr. Davis gave [him] OPM Tylenol when he first came in." *Id.* The nurse noted "no sign of distress," "broken teeth noted to right side upper part mouth," and there was nothing remarkable about the appearance of his gum and jaw near the toothache. *Id.* The nurse provided Brown with ibuprofen for three days. *Id.*

On July 26, 2024, Brown was transferred from ORCU to East Arkansas Regional Unit ("EARU"). Doc. No. 30-2 at 5-6. On July 27, 2024, Brown was examined by a nurse not employed by TK Health who noted that there was "a hole in center of tooth on top R side of mouth, no redness or swelling noted to gumline, no external swelling noted." Doc. No. 30-2 at 5. The nurse then notified a dentist unaffiliated with TK Health, who gave a verbal order to prescribe Brown with ibuprofen for seven days. *Id.* Brown was then placed on a dental list. *Id.*

On August 1, 2024, Brown was examined by Yee Yang, DDS (a dentist unaffiliated with TK Health), as part of a dental sick call. Doc. No. 30-2 at 1. Dr. Yang did not note any concerns in Brown's medical history, recommended that teeth 4 and 5 be extracted as they were "non restorable," and then extracted teeth 4 and 5. *Id.* Dr. Yang then prescribed Brown ibuprofen for two weeks. *Id.*

## IV. Analysis

### A.  Legal Standard – Pretrial Detainee's Medical Treatment Claims

Brown was a pretrial detainee when he was treated by defendants Parsons and Echols between June and September of 2023. Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care).[5] To succeed with

_____

[5] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees. 183 F.3d at 905. The Court acknowledged that pretrial detainees' claims may be subject to an objective reasonable test rather than the subjective deliberate indifference standard. *Id.* The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established

an Eighth Amendment inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

## B.    *Saline County Defendants*

### 1.    Individual Capacity Claims.

The Saline County Defendants argue that they are entitled to qualified immunity with respect to Brown's claims against them in their individual capacities because he cannot establish that they were deliberately indifferent to his serious medical needs.[6] Doc. No. 34 at 3-6. Brown acknowledged in his deposition that Gilliam and Wright were not involved in his medical care, and he sued them based

---

that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

[6] To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Qualified immunity is a question of law, not fact, for the court to decide. *Kelsay v. Ernest*, 933 F.3d 975, 981 (8th Cir. 2019).

on their respective roles with the Facility.  And the record also demonstrates that neither Gilliam nor Wright were involved in Brown's dental treatment.  The lack of involvement by the County Defendants precludes liability on their parts.  *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).  Gilliam and Wright are therefore entitled to summary judgment.

> 2.    Official Capacity Claims.

The County Defendants are also entitled to judgment in their official capacities.  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself.  *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998).  A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013).  Accordingly, Gilliam and Wright, as county employees, can only be held liable in their official capacity in this case if Brown can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th

Cir. 2009).  Brown did not allege in his complaint that his failure to receive dental treatment at the Facility was caused by an unconstitutional policy or custom of Saline County.[7]  Gilliam and Wright are therefore entitled to judgment as a matter of law in their official capacities.

## C.    TK Defendants

Viewing the evidence in the light most favorable to Brown, the Court finds that the undisputed material evidence in the record does not establish that either Parsons or Echols was deliberately indifferent to Brown's serious medical needs for the reasons explained below.

First, the evidence in the record does not show that Brown's broken and decayed tooth constituted an objectively serious medical need in need of immediate treatment.  The TK Defendants summarized the applicable law relating to dental issues in their brief:

> "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden*

---

[7] In his complaint, Brown alleged, "I've also wrote grievances and appeals to the staff of Saline County Detention Center and asked to see the Captain/Gilliam and the Sheriff/Rodney Wright for help but I've not been helped."  Doc. No. 1 at 4.  In his deposition, Brown explains that he sued Gilliam because he was in charge of the Facility and Wright because he promulgated a policy dictating that he submit three sick calls before seeing a dentist.  Doc. No. 35-3 at 17:17-21, 18:17-19:7.  The record shows, however, that Saline County's dental treatment policy did not require three sick calls before being sent to a dentist.  *See* Doc. No. 35-1 at 246.  The record also shows that Brown submitted more than three sick calls and was seen by TK Health staff but not referred to a dentist.  *See* Undisputed Facts, *supra.*

*v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (holding that plaintiff's tooth pain was not a serious medical need because he did not show an "outward sign of injury, such as bleeding and swelling, that a layperson would recognize or established a medical professional diagnosed the dental pain as needing treatment"). *But see Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (concluding a plaintiff who had severe pain "from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating" had alleged an objectively serious medical need for dental care in a § 1983 action); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (evidence that plaintiff had an impacted and infected wisdom tooth, his mouth was so swollen he could barely open it, and pus regularly oozed from the infection sufficient to show serious medical need); *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) (dental pain from an infected tooth coupled with swelling in plaintiff's face sufficient to put sheriff on notice that plaintiff had a serious medical need); *Avery v. Turn Key Health Clinics, LLC*, 839 F. App'x, 26, 26 (8th Cir. 2021) (per curiam) (Kelly, J., concurring in part and dissenting in part) (opining that the plaintiff suffered from a serious medical need when the nurses noted that he showed symptoms of a tooth abscess, including visible signs of tooth decay, infection, redness and swelling of the gums, positivity to percussion tests, and pus surrounding the affected tooth).

Doc. No. 32 at 4-5.   Although Brown complained of pain, each provider that examined him noted there was no sign of infection, no pus, no redness, no swelling,[8] and no positivity to percussion tests.  *See* Undisputed Facts, *supra*.  Each provider also noted that Brown was in moderate, mild, or no distress.  *Id.*  Furthermore, when he was transferred to the ADC's ORCU and examined by Dr. Davis on July 1, 2024 (more than eight months after he was last treated by either TK Defendant), Dr. Davis

---

[8] One entry references "slight swelling" on March 12, 2024, months after Parsons and Echols left employment at the Facility.  Doc. No. 30-1 at 32-33.  All other examinations of Brown's gums, including those by Parsons and Echols, showed no swelling.

did not diagnose Brown with any emergent dental need; he merely stated that teeth 4 and 5 could be extracted and gave Brown a prescription for Tylenol for two weeks. *See* Doc. No. 30-2 at 2.  When Brown was transferred to the EARU a few weeks later, a nurse documented "no redness or swelling to gumline, no external swelling noted."  *Id.* at 5.  And while Brown eventually had his teeth extracted by another dentist, the dentist's only note on Brown's dental condition was that teeth 4 and 5 were "non restorable."  *Id.* at 1.

Second, even if Brown's broken or decayed tooth constituted a serious medical need, there is no evidence that either Parsons or Echols were deliberately indifferent to that need on the few occasions they treated him.  Parsons examined Brown only once and Echols twice. Specifically, on June 14, 2023, Parsons examined Brown's teeth and noted he had a broken tooth but no sign of infection, pus, redness, swelling, or positivity to percussion.  Doc. No. 30-1 at 43-44.  Brown did not complain about his teeth again until three months later, in September.  On September 22, 2023, Echols examined Brown and noted some decay but no sign of infection, pus, redness, swelling, or positivity to percussion.  *Id.* at 38-39.  And on October 11, 2023, Echols examined Brown and noted the same again.  *Id.* at 34-35. Several other non-party providers noted the same.  *See* Undisputed Facts, *supra.*  On each occasion, Brown received prescriptions for pain medication to treat his complaints of pain.  Brown may have disagreed with this course of treatment and

believed he should have been referred to a dentist or received more care than that provided at the Facility. However, a mere disagreement regarding treatment does not equate a constitutional violation. *See Estate of Rosenberg by Rosenberg*, 56 F.3d at 37.

Because the evidence in this record does not establish that Parsons or Echols were deliberately indifferent to Brown's serious medical needs, his claims against them in both their individual and official capacities[9] should be dismissed with prejudice.

## V.  Conclusion

The undisputed facts establish as a matter of law that the defendants were not deliberately indifferent to Brown's serious medical needs. The undersigned therefore recommends that the defendants' motions for summary judgment (Doc. Nos. 30 & 33) be granted. Brown's claims should be dismissed with prejudice.

DATED this 5th day of February, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] *See Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (official capacity claim fails if plaintiff cannot establish a constitutional violation).